NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4309
_____

UNITED STATES OF AMERICA

v.

MICHAEL WILKERSON,
                                                Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-11-cr-00596-001)
District Judge: Honorable Mitchell S. Goldberg

_____

Submitted Under Third Circuit LAR 34.1(a)
September 29, 2014

Before: AMBRO, CHAGARES, and VANASKIE, Circuit Judges

(Opinion filed: October 15, 2014)

_____

OPINION

_____

AMBRO, Circuit Judge

Following a bench trial, Appellant Michael Wilkerson was convicted of bank

fraud, 18 U.S.C § 1344, loan fraud, 18 U.S.C. § 1014, and aiding and abetting those

offenses, 18 U.S.C. § 2. Wilkerson moved for retrial after coming across new evidence

that he said showed that the federally insured institution named in the Indictment was not the object of the fraudulent scheme the Government alleged. The District Court disagreed. Wilkerson appeals that judgment.[1] We agree with the District Court and affirm.

## I.

Wilkerson eyed a number of new construction homes in Eastern Pennsylvania to purchase as investments. Standing in his way was his inadequate credit score. To fix that problem, Wilkerson recruited a group of six individuals to serve as his "straw purchasers." The deal was that, in exchange for $15,000 each, the six individuals would submit mortgage applications in connection with the purchase of the homes Wilkerson sought.

The sales agreement for each of the homes listed the seller as the actual homebuilder and the buyer as Wilkerson's company, Agape Development Company ("Agape"). Each of the agreements also provided for the assignment from Agape to the straw purchaser of the home. The price of the assignment was almost double the initial sales price. To make sure the straw purchasers received the financing they needed, Wilkerson looked to a loan officer at American Group Mortgage ("AGM"), a mortgage brokerage.

The loan officer played a crucial role in Wilkerson's scheme. She falsified the straw purchasers' statements of income and assets in their loan applications. She

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. Our jurisdiction is proper under 28 U.S.C. § 1291.

misrepresented that the homes would be used as the borrowers' primary residences and that of the purchasers would be using their own funds to make the down payment. And, to make it all come together, she arranged for appraisers (all of whom were approved by Chase Manhattan Bank ("Chase Manhattan")) to meet with Wilkerson and appraise each of the properties. The homes were appraised for values that matched the price at which the straw purchasers were buying the homes rather than the price at which they were being sold to Agape.

The loan officer then submitted the loan applications, sales agreements, and appraisals to Chase Manhattan—the underwriter for AGM's loans—for its approval. Relying on the representations made in the loan applications and the appraisals, Chase Manhattan agreed to fund the loans.

At closing, the settlement agent prepared three checks: one made payable to the actual home builder and two made payable to Agape. Wilkerson, with the help of his wife, disguised some of the money obtained at closing as the down payment for each of the homes. This made it appear that the closing conditions had been met. Wilkerson kept the balance of the funds received from Chase Manhattan. His fraudulent scheme lasted only as long as he was able to make the mortgage payments on the seven properties. Predictably, he defaulted on all the loans in December 2007.

Wilkerson was indicted by a grand jury in the Eastern District of Pennsylvania. He was charged with one count of bank fraud, five counts of loan fraud, and aiding and abetting those offenses. He proceeded without a jury and was convicted on all counts.

3

Wilkerson moved for a new trial based on newly discovered evidence. He contended that the Government failed to prove that Chase Manhattan—a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC")—had any direct involvement with the loans at issue in this case. After reopening the record and hearing additional evidence, the District Court denied Wilkerson's motion. He was sentenced to 170 months in prison and a five-year term of supervised release. He was also ordered to pay $1,353,111.93 in restitution and a $600 special assessment.

## II.

Both the bank and loan fraud statutes make criminal a fraud directed against a federally insured bank. Wilkerson first contends the Government did not advance sufficient evidence to satisfy the jurisdictional element of either statute, which requires that a FDIC-insured bank be the object—either directly or indirectly—of the fraudulent scheme. According to Wilkerson, the fraud was directed at AGM rather than FDIC-insured Chase Manhattan, as the loans were "fully funded and closed at settlement" by AGM.

We disagree. AGM was merely an instrument through which Wilkerson obtained money from Chase Manhattan. AGM conducted no review of any of the straw purchasers' loan applications. Nor did it intend to fund any of the loans on its own. It agreed to provide funds from its warehouse line only after securing Chase Manhattan's direct approval. Thus, "the loan—although formally made by [AGM]—was from the outset part of an integrated transaction, the first step of which was dependent on approval by [Chase Manhattan], and the pre-planned second step of which was a transfer of the

4

mortgage to [Chase Manhattan] itself." *United States v. Edelkind*, 467 F.3d 791, 798 (1st Cir. 2006). In light of Chase Manhattan's central role in funding the loans, in sharp contrast to AGM's role as middleman, a rational trier of fact could have found that Wilkerson's fraud was directed at Chase Manhattan rather than AGM.

Separately, but equally a problem, Wilkerson insists that the Government named the wrong victim in the Indictment. He contends that the real victim was JP Morgan Chase Bank, N.A.—the entity that filed a civil lawsuit against Wilkerson to recover the funds he improperly received—rather than Chase Manhattan, as the Government alleged in the Indictment. Thus, the Government failed to introduce sufficient evidence that the federally insured institution named in the Indictment was the defrauded entity.

Nothing of the sort occurred here. At trial, the Government and Wilkerson stipulated that Chase Manhattan was a FDIC-insured institution that had been issued Certificate Number 628 by the FDIC. Later, when the District Court allowed the reopening of evidence, the Government's witness confirmed that Chase Manhattan and JP Morgan Chase Bank, N.A.—both of which are insured under Certificate Number 628—were one and the same as a result of a 2001 merger. Thus, any reference to Chase Manhattan in the Indictment or at trial was effectively a reference to JP Morgan Chase Bank, N.A.

For these reasons, we affirm.

5